# EXHIBIT B

# PROMISSORY NOTE



LOAN NO: ██████1419

| | |
|---|---|
| **Date:** | December 14, 2021 |
| **Borrower:** | Indiana Water Technology LLC |
| | 6404 Myrtle Lane |
| | Indianapolis, IN 46220 |
| | Attn: David A. Schroeder |
| **Lender:** | FIRST FED BANK |
| | PO Box 351 |
| | Port Angeles, WA 98362 |
| **Loan Amount:** | $988,125.00 |
| **Interest Rate:** | Fixed rate of 5-Year FHLB Rate plus Credit Spread, adjusted once on the Adjustment Date, but not less than a Floor Rate of five and ninety-five hundredths (5.95%) per annum. |
| **Maturity Date:** | December 14, 2031 |

FOR VALUE RECEIVED, Indiana Water Technology LLC an Indiana Limited Liability Company (*"Borrower"*), promises to pay to the order of FIRST FED BANK, a Washington bank corporation, or its successor or assignee (*"Lender"*), at the address set forth above or such other place as Lender may from time to time designate in writing, the sum of Nine Hundred Eighty-Eight Thousand One Hundred Twenty Five Dollars AND 00/100THS U.S. DOLLARS (U.S. $988,1250.00), or so much thereof as may from time to time be disbursed hereunder, in lawful money of the United States of America, together with interest on the unpaid principal balance from time to time outstanding hereunder from the date of disbursement under this Promissory Note (this *"Note"*) until paid at the rate set forth below. This Note is non-revolving.

      **1.**     **Loan and Loan Documents.** This Note evidences a loan in the amount set forth above (the *"Loan"*) being made contemporaneously herewith from Lender to Borrower. This Note is made pursuant to and is secured by that certain Business Loan and Security Agreement executed contemporaneously herewith between Borrower and Lender (the *"Loan Agreement"*). The terms (including meanings given to defined terms) and conditions of the Loan Agreement are hereby adopted and incorporated herein to the extent not inconsistent herewith. Among other things, the Loan Agreement grants Lender a first-lien position security interest in the Collateral described and defined therein. The Loan Agreement, this Note, and any other written instruments evidencing, securing, or otherwise governing the Loan are referred to collectively as the *"Loan Documents"*. Borrower hereby agrees to perform and comply with all of the agreements, terms, and conditions of all of the Loan Documents.

      **2.**     **Definitions.**

      "***5-Year FHLB Rate***" means the interest rate designated by the Federal Home Loan Bank of Des Moines as the regular advance rate for fixed-rate advances of five (5) years as posted on the internet at FHLBDM.com under "Advances" and available to Lender as of the last Business Day immediately preceding the relevant Adjustment Date.

      *"Adjustment Date"* means the date that is five (5) years after the date of this Note.

      *"Business Day"* means any day on which the applicable Index is published other than Saturday, Sunday, or a day on which national banks are authorized or required by law to be closed in the city where Lender's office, as identified above, is located.

      *"Credit Spread"* means three and one-half percent (3.50%).

      *"Floor Rate"* means a per annum fixed rate equal to five and ninety-five hundredths (5.95%).

**3.** **Interest Rate.** Subject to Section 7 below (regarding the Default Rate), the outstanding principal balance of this Note shall bear interest at a per annum fixed rate equal to the 5-Year FHLB Rate as of the date of this Note *plus* the Credit Spread. Beginning on the Adjustment Date, and continuing through the Maturity Date, the outstanding principal balance of this Note shall bear interest at a per annum rate equal to the 5-Year FHLB Rate plus the Credit Spread. Notwithstanding the foregoing, in no event shall the interest rate applicable to the Loan be less than the Floor Rate.

**4.** **Monthly Payments of Principal and Interest.** Beginning on January 5, 2022 and continuing the same day of each month thereafter until the Maturity Date, Borrower shall make monthly payments of principal and interest, in equal monthly installments calculated by Lender based on a Ten (10) year amortization period (the ***"Amortization Period"***) and such methodology as Lender may deem appropriate, in its sole discretion, with such monthly payments to be recalculated and adjusted on the first of each month following an Adjustment Date at the then applicable interest rate to re-amortize such payment over the remaining portion of the Amortization Period.

**5.** **Maturity Date.** The entire principal balance, all accrued interest, and any other advances made or expenses incurred by Lender that are payable or reimbursable by Borrower hereunder, or under any of the other Loan Documents, shall become immediately due and payable on December 14, 2031 (the ***"Maturity Date"***).

**6.** **Payments - General**.

**6.1.** **Application of Payments.** Unless otherwise required by Lender, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower agrees, however, that upon the occurrence of an Event of Default and until such has been cured, Lender shall have the right, in its sole discretion, to modify the order in which payments are applied, and to apply payments to indebtedness owing under the Loan in a different order than that indicated above.

**6.2** **Payments from Deposit Account.** All monthly payments must be made through the Borrower's Deposit Account. Lender is hereby authorized to pay any principal, interest, or other amount due under the Loan Documents when and as the same shall become due by automatically debiting funds on deposit in the Deposit Account.

**6.3** **Computation of Interest**. All interest calculated under this Note shall be computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. Any payment not received by 5:00 p.m. Pacific Time will be treated as having been received by Lender on the next day, and interest shall continue to accrue until the next day.

**6.4** **Late Charge**. In the event that any installment payment of principal or interest due hereunder is not paid within ten (10) days of the date it is due, Borrower shall pay, in addition to the delinquent payment, a late charge of five percent (5.0%) or $5.00, whichever is greater, of the amount overdue in order to defray the expense incident to handling such delinquent payment.

**7.** **Default Rate**. Following an uncured Event of Default in the payment of any installment of principal or interest when due hereunder, or an uncured Event of Default in the observance or performance of any other obligation hereunder or under any of the other Loan Documents, interest shall accrue hereunder from the date of such uncured Event of Default at an annual interest rate equal to eighteen percent (18%) per annum (the ***"Default Rate"***). After the entire principal amount of the Loan shall become due and payable, whether by acceleration, at maturity, or otherwise, this Note shall bear interest at the Default Rate.

**8.** **Prepayment.** Borrower may prepay Borrower's obligations under this Note in full or in part at any time or from time to time; *provided, however*, that except as set forth below, the Loan may be prepaid only upon payment of the applicable prepayment premium provided for below.

**8.1** **Prepayment Premium.** Prepayments of all or any portion of the principal balance of the Loan, including any involuntary prepayments as described below (excluding, however, prepayments permitted under Section 8.5 below), shall be subject to a prepayment premium during each of the following periods (the "***Prepayment Periods***") of the term of the Loan commencing at closing of the Loan:

| Prepayment Periods | Prepayment Premium Calculation As Percentage of Principal Prepaid |
|---|---|
| Through the date that immediately precedes the one-year anniversary of the date of this Note: | Three Percent (3.0%) |
| From the one-year anniversary of the date of this Note through the date that immediately precedes the two-year anniversary of the date of this Note: | Two Percent (2.0%) |
| From the two-year anniversary of the date of this Note through the date that immediately precedes the three-year anniversary of the date of this Note: | One Percent (1.00%) |
| Remaining Term of the Loan: | None |

**8.2     Involuntary Prepayment.**  Involuntary prepayment shall include, but is not limited to, prepayment in the event of a default or in connection with acceleration or foreclosure, or any prepayment pursuant to or in connection with any sale under court order or power of sale, whether in judicial or non-judicial foreclosure, bankruptcy, or other insolvency proceeding, any deed in lieu of foreclosure or sale, or any other method or proceeding whatsoever, excepting only prepayment through application of insurance or condemnation proceeds, to which no prepayment premium shall be applicable.  Any prepayment premium owing to Lender shall be due from Borrower in connection with any satisfaction allowed under applicable law relating to any foreclosure proceeding, and shall be due from any other lien holder or person who tenders payment of the amount owed by Borrower under applicable law, including principles of equitable subrogation.  Lender shall be entitled to include in its credit bid at any foreclosure any applicable prepayment premium.  Furthermore, Lender shall not be required to accept any such prepayment, whether from Borrower or any other party paying the Loan, if it does not include the prepayment premium, if applicable.

**8.3     Effect of Prepayment.**  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, they will reduce the principal balance due and may result in Borrower's making fewer payments.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  First Federal Savings & Loan Association of Port Angeles, ATTN: Loan Servicing, 105 W 8th St/P.O. Box 351, Port Angeles, WA 98362-0055.**

**8.4     Acknowledgment of Right as Bargained-For Compensation.**  BORROWER ACKNOWLEDGES LENDER'S RIGHT TO RECEIVE A PREPAYMENT PREMIUM IN ACCORDANCE WITH THE TERMS HEREOF AND HEREBY WAIVES ANY RIGHT OR PRIVILEGE TO PREPAY ALL OR ANY PORTION OF THIS NOTE EXCEPT AS SPECIFICALLY PROVIDED HEREIN.  BORROWER FURTHER ACKNOWLEDGES THAT THE PREPAYMENT PREMIUM, AS DUE UNDER THE CIRCUMSTANCES AND AS CALCULATED IN THE MANNER DESCRIBED ABOVE, REPRESENTS THE REASONABLE ESTIMATE OF LENDER AND BORROWER OF A FAIR AVERAGE COMPENSATION FOR THE LOSS THAT LENDER MAY SUSTAIN DUE TO THE PAYMENT OF ANY OF THE INDEBTEDNESS EVIDENCED BY THIS NOTE PRIOR TO ITS DUE DATE, DUE TO, AMONG OTHER REASONS, THE COSTS AND OVERHEAD OF LENDER IN INVESTIGATING AND PLACING THIS LOAN AND IN INVESTIGATING A SUBSTITUTE INVESTMENT OF FUNDS.  SUCH PREPAYMENT PREMIUM SHALL BE PAID WITHOUT PREJUDICE TO THE RIGHT OF LENDER TO COLLECT ANY OTHER AMOUNTS REQUIRED TO BE PAID HEREUNDER OR UNDER ANY OTHER DOCUMENTS EVIDENCING OR SECURING THE LOAN.  BORROWER CONFIRMS THE ACKNOWLEDGMENTS EXPRESSED HEREIN AND DECLARES THAT LENDER'S AGREEMENT TO MAKE THE LOAN IN ACCORDANCE WITH THE LOAN DOCUMENTS CONSTITUTES ADEQUATE CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY BORROWER, FOR THIS WAIVER AND AGREEMENT.

**8.5     Permitted Prepayment.**  Notwithstanding the foregoing, Borrower may prepay up to twenty percent (20.0%) of the principal balance of the Loan during each of the Prepayment Periods set forth in Section 8.1 without penalty or premium (including the prepayment premium required under Section 8.1). If and to the extent any prepayments exceed twenty percent (20.0%) of the principal balance of the Loan during any Prepayment Period, Borrower shall pay the corresponding prepayment premium set forth in Section 8.1 together with such prepayment(s).

**9.** **Business Purpose; Maximum Interest and Fees.** Borrower agrees to the applicable interest rate, plus any other charges to Borrower or benefit received by Lender under the Loan Documents that may be interpreted to be in the nature of interest. Borrower represents and warrants to Lender that the proceeds of this Note shall be used exclusively for commercial, business, or investment purposes, and that none of the proceeds of this Note shall be used by Borrower for personal, family, or household purposes. Notwithstanding any other provision of the Loan Documents, the interest, fees and charges under the Loan Documents shall not exceed the maximum amounts permitted by any applicable law, and should Lender ever receive as interest an amount that would exceed permissible rates, such amount shall be applied to the reduction of the unpaid principal balance and not to the payment of interest. This provision shall supersede every other provision of all the Loan Documents.

**10.** **Acceleration.** Upon the occurrence of an Event of Default resulting from Borrower's failure to pay any amount payable hereunder as and when due or upon the occurrence of any other Event of Default under this Note or under any of the other Loan Documents, Lender may declare, at its sole option and without notice to any party, the entire indebtedness evidenced hereby immediately due and payable in full. Failure to exercise this option or any other right Lender may have shall not constitute a waiver of the right to exercise such option or any other right in the event of any subsequent Event of Default.

**11.** **Costs and Fees of Collection; Interest on Judgments.** Borrower and every other person or entity at any time liable for the payment of the indebtedness evidenced hereby shall also be liable for all costs, expenses, and fees incurred by Lender in collecting any amounts owing hereunder, including, but not limited to, reasonable attorneys' fees. Any judgment recovered by Lender shall bear interest at the Default Rate.

**12.** **Waiver of Presentment.** Borrower and every other person or entity at any time liable for the payment of the indebtedness evidenced hereby each waive diligence, demand, presentment for payment, notice of protest, and notice of nonpayment of this Note. Every such person or entity further consents to any extension of the time of payment hereof or other modification of the terms of payment of this Note, the release of all or any part of the security for this Note, or the release of any party liable for the payment of the indebtedness evidenced hereby at any time and from time to time for any reason whatsoever. Any such extension or release may be made without notice to any of such persons or entities and without discharging their liability.

**13.** **Time is of the Essence.** Time is of the essence of this Note and the performance of each of the agreements and provisions contained herein.

**14.** **Joint and Several Liability.** The liability hereunder of multiple parties identified herein as Borrower shall be joint and several.

**15.** **Applicable Law.** This Note shall be construed in accordance with the laws of the State of Washington, without regard to that state's choice of law rules. Borrower hereby consents to the jurisdiction of the courts of King County, the State of Washington.

**16.** **Successors and Assigns.** Borrower may not assign any of its rights or obligations under this Note without the prior written consent of Lender. Subject to the preceding sentence, this Note shall be binding upon the respective heirs, legal representatives, successors, and assigns of Borrower and shall inure to the benefit of Lender and its successors and assigns, including, without limitation, each successive holder of this Note and any other lenders now or hereafter participating in the Loan.

**17.** **Recourse.** BORROWER ACKNOWLEDGES LIABILITY FOR PAYMENT OF ALL AMOUNTS OWING UNDER THIS NOTE AND THE OTHER LOAN DOCUMENTS AND AGREES THAT LENDER DOES NOT HAVE TO FORECLOSE ITS SECURITY INTEREST GRANTED BY THE LOAN AGREEMENT OR ANY OTHER COLLATERAL BEFORE DEMANDING FULL PAYMENT FROM BORROWER.

**18.** **Waiver of Trial by Jury.** Borrower hereby waives, to the fullest extent permitted by applicable law, the right to a trial by jury in any action or proceeding based upon, or related to, the subject matter of this Note. This waiver is knowingly, intentionally, and voluntarily made by Borrower, and Borrower acknowledges that no person acting on behalf of Lender has made any representations of fact to induce this waiver of trial by jury or in any way to modify or nullify its effect. Borrower further acknowledges that Borrower has been represented (or has had the opportunity to be represented) in the signing of this Note and in the making of this waiver by independent legal counsel, selected of Borrower's own free will, and that Borrower has had the opportunity to discuss this waiver with counsel.

**[Remainder of Page Intentionally Left Blank; Signature Appears on Following Page]**

19.     **No Oral Agreements.**

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

DATED as of the date set forth above.

**BORROWER**:

Indiana Water Technology LLC
an Indiana Limited Liability Company

By: _David A. Schroeder_
        1C36322A5EBA4AD...
        Name: David A. Schroeder
        Its: Member/Manager