# EXHIBIT C



# UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

This UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE (this *"Guaranty"*), is made as of December 14, 2021 by David A. Schroeder (*"Guarantor"*), for the benefit of FIRST FED BANK, a Washington bank corporation (together with its successors, participants and assigns, "*Lender*").

## RECITALS

Guarantor has requested that Lender make a term loan to Indiana Water Technology LLC an Indiana Limited Liability Company (*"Borrower"*) in the principal amount of Nine Hundred Eighty-Eight Thousand One Hundred-Twenty Five Dollars AND 00/100THS U.S. DOLLARS (U.S. $988,125.00) (the "*Loan*").

      **A.**    The Loan is evidenced by a Promissory Note of even date herewith (the "*Note*"), governed by a Business Loan and Security Agreement between Borrower and Lender of even date herewith (the "*Loan Agreement*") which, among other things, grants Lender a first-lien security interest in the collateral described and defined therein (as defined below, the "*Collateral*").

      **C.**    Lender's agreement to make the Loan is conditioned on Guarantor's execution of this Guaranty, and Lender would not make the Loan to Borrower without the agreements of Guarantor set forth herein. Guarantor will receive direct and tangible financial benefits from the Loan.

      **D.**    Capitalized terms used but not defined herein shall have the meanings given to such terms in the Loan Agreement.

## AGREEMENTS

NOW, THEREFORE, intending to be legally bound, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce Lender to enter into the Loan, Guarantor hereby agrees as follows:

      **1.**    **Unconditional Guaranty of Payment and Performance.** Guarantor unconditionally, absolutely, and irrevocably guarantees the following "*Guaranteed Obligations*":

          **1.1**    the due and punctual payment of all amounts (collectively herein, the *"Indebtedness"*) payable by Borrower under the Loan Agreement, the Note, and other agreements and instruments that evidence, secure, or otherwise govern the Loan, but excluding the Indemnity Agreement (collectively, the *"Loan Documents"*); and

          **1.2**    the prompt payment of all obligations of Borrower to Lender arising from any interest rate hedging program, including, without limitation, any interest rate swap, cap, or such other interest rate protection product, whether now existing or entered into hereafter (each an "*Interest Rate Protection Product*"), including, without limitation, any Cash Settlement Amount or any payments on Early Termination payable by Borrower under any Swap Transaction or Confirmation; *provided, however*, the term "Interest Rate Protection Product" shall not include any interest rate swap, cap, or other interest rate protection product if, at the time Borrower enters into any such product, it is unlawful for Guarantor to guarantee the obligations of Borrower thereunder. Capitalized terms used in this subsection 1.2 but not otherwise defined in this Guaranty or in the Loan Agreement are defined in the *2006 ISDA Definitions* published by the International Swap and Derivatives Association, Inc.; and

          **1.3**    the full, complete and punctual observance, performance and satisfaction of all the obligations, duties, covenants and agreements of Borrower under the Loan Agreement and the other Loan Documents.

      **2.**    **Guarantor's Obligations are Absolute.** This is an absolute, present, and continuing guaranty of payment and performance and not of collection. This Guaranty may be enforced by Lender without the necessity at any time of resorting to or exhausting any Collateral (defined below) through foreclosure or sale proceedings, as the case may be, under the Loan Agreement or otherwise, or resorting to any other guaranties, and Guarantor hereby waives any right to require Lender to join Borrower or any other Guarantor in any action brought hereunder or to commence any action against or obtain any judgment against Borrower or to pursue any other remedy or enforce any other right. Guarantor further agrees that nothing contained herein or otherwise shall prevent Lender

---

from pursuing concurrently or successively all rights and remedies available to Lender at law or in equity or under any of the Loan Documents.  Lender's exercise of any of its rights or remedies shall not constitute a discharge of Guarantor's obligations hereunder, it being the purpose and intent of Guarantor that the obligations of Guarantor hereunder shall be absolute, independent, and unconditional under all circumstances whatsoever.  None of Guarantor's obligations under this Guaranty nor any of Lender's rights or remedies shall be impaired, modified, changed, or released in any manner whatsoever by any impairment, modification, change, release, or limitation of Borrower's liability under any of the Loan Documents or by reason of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower or any Guarantor.

3. **Rights of Lender.**

3.1     Guarantor agrees that Lender may deal exclusively with Borrower in all matters relating to the Loan without notice of any kind to or the approval of Guarantor.  Specifically, Lender is not required to (a) notify Guarantor of Lender's acceptance of this Guaranty; (b) notify Guarantor when Lender advances Loan proceeds, extends credit to Borrower, or pays any obligations of Borrower; (c) notify Guarantor of any default under the Loan Documents; or (d) make presentment and demand for payment, protest, or notice of demand, protest, dishonor, and nonpayment.  It is intended that Guarantor shall remain fully liable regardless of any act or omission by Lender that might otherwise directly or indirectly result, by operation of law or otherwise, in the discharge or release in whole or in part of Borrower, any other guarantor, or any other person, or the discharge, release, or impairment of any collateral now or hereafter held as security for any of the obligations under the Loan Documents (collectively herein, the "*Collateral*").

3.2     Lender shall have the right to set off the unpaid balance of the Guaranteed Obligations against any indebtedness owing to Guarantor by Lender or by any Lender Affiliate, including, without limitation, any obligation under a repurchase agreement or any funds held at any time by Lender or any Lender Affiliate, whether collected or in the process of collection, or in any time or demand deposit account maintained by Guarantor at, or evidenced by any certificate of deposit issued by, Lender or any Lender Affiliate.  Guarantor agrees, to the fullest extent it may effectively do so under applicable law, that any holder of a participation in the Note may exercise rights of set-off or counterclaim and other rights with respect to such participation as fully as if such holder of a participation were a direct creditor of Guarantor pursuant to this Agreement in the amount of such participation.

4. **Modifications and Actions by Lender.**  Without limiting the generality of the foregoing, Guarantor agrees that Lender may do, or fail to do, any of the following one or more times, without notice to or the approval of Guarantor, without diminishing, altering, or otherwise affecting the liability of Guarantor hereunder, and even though Borrower's financial condition may have deteriorated or Guarantor may object:  (a) Lender may renew, extend, or otherwise change the time for payment of the obligations of Borrower to Lender; (b) Lender may increase the amount of the Loan; (c) Lender may modify any other terms of the Loan; (d) Lender may release, surrender, substitute, or exchange any of the Collateral, or take and hold additional or other security for the payment of this Guaranty or any other indebtedness guaranteed, and exchange, enforce, waive, or release any such security; (e) Lender may release Borrower, any Guarantor, or any other guarantor from obligations under the Loan or any guaranty thereof; (f) Lender is not required to marshal assets and Lender may take a deed in lieu of foreclosure or foreclose or realize upon such security and direct the amount or manner of sale thereof as Lender in its discretion may determine; (g) Lender may apply the Collateral to the repayment of any amounts owing to Lender under the Loan Documents in any order Lender may determine in its discretion; (h) Lender may forbear from pursuing Borrower, any Guarantor, or any other guarantor or any other person, or forbear from foreclosing or otherwise realizing upon any of the Collateral; (i) Lender may impair or fail to perfect a security interest in any of the Collateral; (j) Lender may take actions that have the effect of diminishing Guarantor's subrogation rights; and (k) Lender may take any other actions with respect to the terms of or security for the Guaranteed Obligations.  Notwithstanding any such action by Lender, Guarantor's obligations hereunder shall remain in full force and effect.

5. **Guarantor Waivers.**

5.1     **Waiver of Suretyship Defenses.**  Guarantor hereby waives any defenses based on the action or inaction of Lender that might otherwise be deemed a legal or equitable discharge of a surety, including, without limitation, any defense based on any of the following: (a) the lack of diligence or any delay in enforcing, or any waiver of or failure to enforce, any right or remedy under the Loan Documents; (b) the failure or invalidity of, or any defect in, the Loan Documents; (c) any disability or other defense of Borrower, any Guarantor, any other guarantor, or any other person; (d) the termination from any cause whatsoever of any of the obligations under the Loan Documents, except upon full satisfaction of the Guaranteed Obligations; (e) the loss or impairment of any right of subrogation; (f) any modification of any of the terms and conditions of the Loan Documents in any form whatsoever and without notice to Guarantor; or (g) the foreclosure of the Collateral or any portion thereof, it being intended that this Guaranty shall

survive the realization upon any of the Collateral, including, but not limited to, any nonjudicial foreclosure action and any deed in lieu of foreclosure, to the extent permitted under applicable law.

        **5.2**      **Waiver of Right of Reimbursement.**  Unless and until the Guaranteed Obligations have been fully satisfied, Guarantor hereby waives any right of reimbursement, contribution, recourse, or any other right or remedy of Guarantor against Borrower, any Guarantor, any other guarantor or any other person to recover amounts that Guarantor is obligated to pay under this Guaranty.

        **5.3**      **Waiver of Right of Subrogation.**  Unless and until the Guaranteed Obligations have been fully satisfied, Guarantor hereby waives any right of subrogation, any right to enforce any remedy Lender may have against Borrower, any Guarantor, any other guarantor, or any other person, and any benefit of, and the right to participate in, any of the Collateral.

    **6.**      **Subordination of Debt.**  Any debt of Borrower now or hereafter held by any Guarantor is hereby subordinated to the Indebtedness.  Guarantor shall not seek, accept, or retain for its own account any payment from Borrower on account of any subordinated debt until the entire Indebtedness has been paid in full.  Any payment of such subordinated indebtedness by Borrower to Guarantor before payment in full of the Indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and promptly paid to Lender in payment of the Indebtedness.

    **7.**      **Anti-Deficiency and One-Form-Of-Action Rules.**

        **7.1**      Guarantor understands that certain statutes, commonly referred to as "anti-deficiency" and "one form of action" rules, may prevent or inhibit a lender, after completing a non-judicial foreclosure or accepting a deed in lieu of foreclosure, from obtaining a deficiency judgment against a borrower or from collecting the amount of the deficiency from a guarantor, unless such borrower or guarantor has knowingly waived the application of such statutes and the benefits that it would otherwise receive from such statutes.  This curtailment of a lender's rights to recover a deficiency from a guarantor is based in part on the fact that a lender's election of a non-judicial foreclosure or a deed in lieu of foreclosure from among other possible default remedies impairs or eliminates a guarantor's rights of subrogation and reimbursement against the borrower, the collateral, or any other surety for the borrower's obligations.

        **7.2**      Guarantor understands that, unless it waives the protection that such rules would ordinarily confer, these "anti-deficiency" and "one form of action" rules might provide a defense to enforcement of this Guaranty if Lender elects to proceed with a non-judicial foreclosure or to accept a deed in lieu of foreclosure.  Nevertheless, as an inducement for Lender to make the Loan, Guarantor hereby knowingly waives, in advance and to the extent permitted under applicable law, all its rights to rely on the anti-deficiency and "one form of action rules" in connection with the impairment of its subrogation rights, as a defense to this Guaranty.  Guarantor hereby acknowledges and agrees that Lender may, in its sole discretion, exercise any right or remedy whatsoever that it may have against Borrower or any security held by Lender, including, without limitation, the right to foreclose upon any collateral for the Loan by judicial or non-judicial sale or to take a deed in lieu of foreclosure, without affecting or impairing in any way the liability of Guarantor hereunder (except to the extent that the Guaranteed Obligations have been fully paid and performed), even if such election operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy of Guarantor against Borrower or any security for the Loan.  Guarantor further waives any statutes that provide "fair value" protection by limiting a deficiency judgment to the difference between the property's fair market value (or foreclosure sale price, if greater) and the amount of the obligation being foreclosed.

    **8.**      **Costs and Reasonable Attorneys' Fees.**  Guarantor shall pay all of Lender's expenses incurred in any effort to enforce any terms of this Guaranty, whether or not any suit is filed, including, without limitation, reasonable attorneys' fees and disbursements, foreclosure costs, and title charges.  Such sums shall be immediately due and payable and shall bear interest from the date of disbursement at the Default Rate set forth in the Loan Documents, or the maximum rate that may be collected from Borrower under applicable law, if less.

    **9.**      **Representations and Warranties.**  To induce Lender to make the Loan, each Guarantor makes the representations and warranties to Lender set forth in this Section.  Guarantor acknowledges that, but for the truth and accuracy of the matters covered by the following representations and warranties, Lender would not have agreed to make the Loan.

        **9.1**      All representations and warranties relating to Guarantor set forth in the Loan Agreement are true and correct and made and affirmed by Guarantor as though set forth fully herein.

9.2 All balance sheets, net worth statements, bank and brokerage statements, and other financial data with respect to Guarantor that have been given to Lender by or on behalf of that Guarantor fairly and accurately represent the financial condition of that Guarantor as of the respective dates thereof.

9.3 This Guaranty creates legal, valid, and binding obligations of Guarantor enforceable in accordance with its terms. The execution, delivery, and performance by Guarantor of this Guaranty does not and will not contravene or conflict with (a) any law, order, rule, regulation, writ, injunction, or decree now in effect of any government authority, or court having jurisdiction over Guarantor; (b) any contractual restriction binding on or affecting Guarantor or Guarantor's property or assets that may adversely affect Guarantor's ability to fulfill its obligations under this Guaranty; (c) the instruments creating any trust holding title to any assets included in Guarantor's financial statements; or (d) the organizational or other documents of Guarantor.

9.4 Except as disclosed in writing to Lender, there is no action, proceeding, or investigation pending or, to the knowledge of Guarantor, threatened or affecting Guarantor, that may adversely affect Guarantor's ability to fulfill its obligations under this Guaranty.

9.5 Guarantor is not in default under any agreements that may adversely affect Guarantor's ability to fulfill its obligations under this Guaranty.

9.6 Guarantor (a) has a financial interest in Borrower and the financial benefits to Guarantor from the Loan constitute reasonably equivalent value for the execution of this Guaranty; (b) is not insolvent and will not become insolvent as a result of this Guaranty; (c) is not engaged in a business or transaction, and is not about to engage in a business or transaction, for which the property of Guarantor constitutes unreasonably small capital and that would leave Guarantor insolvent; (d) does not intend to or believe that it will incur debts that would be beyond Guarantor's ability to pay as such debts mature; (e) has reviewed and approved all of the terms and conditions of the Loan Documents; and (f) has established adequate means of obtaining, and will obtain from Borrower on a continuing basis, all financial and other information regarding Borrower, any other guarantor, and the Loan, without any obligation on the part of Lender to provide any such information.

All the foregoing representations and warranties shall survive so long as any of the Guaranteed Obligations have not been satisfied. Guarantor hereby agrees to indemnify, defend, and hold Lender free and harmless from and against all loss, cost, liability, damage, and expense, including reasonable attorneys' fees and costs that Lender may sustain by reason of the inaccuracy or breach of any of the foregoing representations and warranties.

10. **Insolvency.** So long as any of the Guaranteed Obligations are unpaid and this Guaranty remains in effect, Guarantor agrees to file all claims against Borrower in any bankruptcy or other proceeding in which the filing of claims is required by law relating to indebtedness owed by Borrower to Guarantor and to assign to Lender all rights of Guarantor thereunder up to the amount of such unpaid Guaranteed Obligations. In all such cases the Persons authorized to pay such claims shall pay to Lender the full amount thereof to the full extent necessary to pay the Guaranteed Obligations and Guarantor hereby assigns to Lender all of Guarantor's rights to all such payments to which Guarantor would otherwise be entitled. Notwithstanding the foregoing, and except to the extent that any sums owed by Borrower to Lender under the Loan Documents have been fully satisfied thereby, the liability of Guarantor hereunder shall in no way be affected by (a) the release or discharge of Borrower in any creditors', receivership, bankruptcy or other proceedings; or (b) the impairment, limitation or modification of the liability of Borrower or the estate of Borrower in bankruptcy resulting from the operation of any present or future statute, regulation, or from the decision of any court.

11. **Preferences, Fraudulent Conveyances, Etc.** If Lender is required to refund, or voluntarily refunds, any payment received from Borrower because such payment is or may be avoided, invalidated, declared fraudulent, set aside or determined to be void or voidable as a preference, fraudulent conveyance, impermissible setoff or a diversion of trust funds under applicable bankruptcy laws or for any similar reason, including, without limitation, any judgment, order or decree of any court or administrative body having jurisdiction over Lender or any of its property, or any settlement or compromise of any claim effected by Lender with Borrower or any other claimant ("***Rescinded Payment***"), then Guarantor's liability to Lender shall continue in full force and effect, or Guarantor's liability to Lender shall be reinstated, as the case may be, with the same effect and to the same extent as if the Rescinded Payment had not been received by Lender, notwithstanding the cancellation or termination of the Note or any of the other Loan Documents. In addition, Guarantor shall pay or reimburse Lender for all expenses (including all reasonable attorneys' fees, court costs and related disbursements) incurred by Lender in the defense of any claim that a payment received by Lender in respect of all or any part of the Guaranteed Obligations must be refunded. The provisions of this Section shall survive the termination of this Guaranty and any satisfaction and discharge of Borrower by virtue of any payment, court order or any federal or state law.

**12.    Community Property.**  Unless Guarantor's obligations hereunder are otherwise limited by a specific annotation either on the first page of this Guaranty or following Guarantor's signature below, any married person who signs this Guaranty as a Guarantor warrants that it is an obligation incurred on behalf of his or her marital community and agrees that this Guaranty shall bind the marital community.

**13.    Lender's Election of Remedies.**  This Guaranty may be enforced against any Guarantor without attempting to collect from Borrower, any other Guarantor, or any other guarantor, or any other person, and without attempting to enforce Lender's rights in any of the Collateral.  Lender may join Guarantor in any suit relating to the Loan Documents or proceed against any Guarantor in a separate action.  Lender shall have the right to exercise its remedies in such order as it determines in its sole discretion.

**14.    Joint and Several Liability.**  The liability of each Guarantor and any other guarantors of the Loan shall be joint and several.

**15.    Guarantor's Ongoing Reporting Obligations**.  Each Guarantor acknowledges that it has read or adequately understands the content of the Loan Documents.  Each Guarantor agrees to promptly, and in any event within five (5) days after Lender's request, provide Lender with financial statements, certifications of liquidity, and other reports and information as required of Guarantor under the Loan Agreement or as requested by Lender from time to time.  Guarantor shall further notify Lender in writing of any change of address, telephone number, fax number, marital status (if an individual), or legal organization (if an entity) within 10 days after such event.

**16.    Guarantor Covenants.**  Guarantor shall perform all covenants of Guarantor under the Loan Documents, including, without limitation, any financial covenants and reporting requirements applicable to Guarantor under the Loan Agreement.

**17.    Notices.**  Any notice, demand, request, or other communication that any party hereto may be required or may desire to give hereunder shall be given in writing to the addresses set forth below and shall be deemed to have been properly given (a) if hand delivered, when delivered; (b) if mailed by United States Certified Mail (postage prepaid, return receipt requested), three Business Days after mailing; (c) if by Federal Express or other reliable overnight courier service, on the next Business Day after delivered to such courier service; or (d) if by confirmed e-mail transmission on the day of transmission so long as a copy is sent on the same day by overnight courier to the address set forth below:

**If to Guarantor:**

> David A. Schroeder
> 6404 Myrtle Lane,
> Indianapolis IN46220
> Telephone:(317) 432-6225
> E-mail:  davidaschroeder@yahoo.com

**If to Lender:**     FIRST FED BANK
PO Box 351
Port Angeles, WA 98362
Attn:  Kasi O'Leary
Email:  kasi.oleary@ourfirstfed.com

Any party may change its address for notices by notifying the others in writing of the change as set forth herein.

**18.    Assignment.**  The term **"Lender"** shall include any subsequent holder of or participant in any of the Loan Documents.  Lender may assign the Loan Documents in whole or in part and grant participations therein, without notice and without affecting Guarantor's liability under this Guaranty.  Lender may make available to any proposed assignee or participant all credit and financial data with respect to Guarantor as may be in the possession of Lender.  Guarantor agrees to furnish any additional information that any proposed assignee or participant may reasonably request.

**19.    Applicable Law**.  This Agreement shall be construed in accordance with and governed by the laws of the State of Washington, without regard to that state's choice of law rules.  The parties consent to the jurisdiction of the courts of King County, the State of Washington.

---

20.     **Miscellaneous.**  Guarantor agrees as follows: (a) this Guaranty shall be binding upon and enforceable against Guarantor's heirs, legal representatives, successors, and assigns; (b) this Guaranty constitutes the entire understanding between Lender and Guarantor regarding the subject matter hereof, and no course of prior dealing between the parties shall be used to supplement or modify the terms of this Guaranty; (c) this Guaranty may be changed, modified or supplemented only through a writing signed by Guarantor and Lender; (d) if any provision of this Guaranty is invalid, illegal, or unenforceable, such provision shall be considered severed from the rest of this Guaranty and the remaining provisions shall continue in full force and effect as if the invalid provision had not been included; and (e) this Guaranty may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original, and all of which taken together shall constitute one and the same instrument.

21.     **Waiver of Jury Trial.**  GUARANTOR HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS GUARANTY AND THE GUARANTEED OBLIGATIONS.  THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY GUARANTOR, AND GUARANTOR ACKNOWLEDGES THAT NO PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.  GUARANTOR FURTHER ACKNOWLEDGES THAT GUARANTOR HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF GUARANTOR'S OWN FREE WILL, AND THAT GUARANTOR HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

22.     **Independent Obligation.**  Guarantor understands and agrees that (a) the obligations under this Guaranty are separate and independent from Borrower, any Guarantor, any other guarantor, or any other person, and represent an unconditional, absolute, and irrevocable obligation on the part of Guarantor to pay the full amount of the indebtedness when due; (b) Lender is not required to pursue Borrower, any Guarantor, any other guarantor, or any other person, or foreclose or realize on all or any portion of the Collateral, or pursue any other remedies before demanding full payment from Guarantor; and (c) Guarantor shall remain fully liable under this Guaranty even if the Collateral is impaired or discharged or Borrower, any Guarantor, any other guarantor, or any other person is discharged or otherwise relieved of liability under the Loan Documents.

23.     **Notice Disclaiming Oral Agreements.**

> RCW 16.36.140 DISCLOSURE:  ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

**[Remainder of Page Intentionally Left Blank; Signatures Appear on Following Page]**

Dated as of the date set forth above.

**GUARANTOR:**

*DocuSigned by:*

*David A. Schroeder*

1C36322A5FBA4AD...

Name: David A. Schroeder